UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LISA CARR,

                          Plaintiff,

v.                                                    3:12-CV-1768
                                                      (GTS)
CAROLYN W. COLVIN, Acting Comm'r of Soc. Sec.,

                          Defendant.
_____

APPEARANCES:                                OF COUNSEL:

LACHMAN & GORTON                            PETER A. GORTON, ESQ.
  Counsel for Plaintiff
P.O. Box 89
1500 East Main Street
Endicott, NY 13761-0089

U.S. SOCIAL SECURITY ADMIN.                 ANDREEA L. LECHLEITNER,
OFFICE OF REG'L GEN. COUNSEL -REGION II     ESQ.
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this Social Security action filed by Lisa Carr ("Plaintiff")

against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42

U.S.C. §§ 405(g) and 1383(c)(3) are the parties' cross-motions for judgment on the pleadings.

(Dkt. Nos. 10, 11.)  For the reasons set forth below, Plaintiff's motion is granted and Defendant's

motion is denied.

## I.     RELEVANT BACKGROUND

### A.     Factual Background

Plaintiff was born on July 28, 1985. Plaintiff has completed education through the eleventh grade. She received special education services. Plaintiff has attempted to earn her General Equivalency Diploma, but failed the exam. She has most recently worked as a cashier and stock clerk for a convenience store. Generally, Plaintiff's alleged disability consists of depression, anxiety, panic disorder, Attention Deficit Hyperactivity Disorder ("ADHD"), sleep disorder, migraine headaches, vertigo and ankle pain. Her alleged disability onset date is February 28, 2009, and her date last insured is December 31, 2009.

### B.     Procedural History

On October 26, 2011, Plaintiff applied for Social Security Disability Insurance and Supplemental Security Income ("SSI"). Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On August 9, 2012, Plaintiff appeared before the ALJ, Elizabeth Koennecke. (T. 47-66.) On August 28, 2012, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 26-46.) On October 26, 2012, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-4.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C.     The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law. (T. 32-40.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (T. 32.) Second, the ALJ found that, as of the date of Plaintiff's application for SSI, her panic disorder was a severe impairment, but that none of

Plaintiff's mental impairments were severe on and after her alleged onset date through her date last insured. (T. 32-34.) Third, the ALJ found that Plaintiff does not have a severe impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 34-35.) The ALJ considered Listing 12.06. (*Id.*) Fourth, the ALJ found that Plaintiff has no exertional limitations and that mentally, she retains the ability (on a sustained basis) to frequently understand, carry out and remember simple instructions, frequently respond appropriately to supervisors, coworkers and ususal work situations, and frequently deal with changes in a routine, low contact work setting. (T. 35-39.) Fifth, the ALJ found that Plaintiff has no past relevant work. (T. 39.) Sixth, and finally, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T. 39-40.)

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

Plaintiff makes seven separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the failure to consider relevant evidence submitted to the Appeals Council warrants reversal, or, in the alternative, remand. (Dkt. No. 10 at 9-11 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ erred, at step two of the sequential analysis, when she concluded that no mental impairment has been shown on and after Plaintiff's alleged onset date. (*Id.* at 11-14.) Third, Plaintiff argues that the ALJ erred in finding, at step three of the sequential analysis, that Plaintiff's anxiety disorder does not meet or equal Listing 12.06. (*Id*. at 14-17.) Fourth, Plaintiff argues that the ALJ violated the treating physician rule. (*Id.* at 17-18.) Fifth, Plaintiff argues that the ALJ failed to properly assess her RFC and improperly assessed her credibility. (*Id.* at 18-22.) Sixth, Plaintiff argues that the ALJ erred at step five of the sequential analysis when she failed to elicit testimony from a vocational expert.

(*Id.* at 22-23.)  Seventh, and finally, Plaintiff argues that the ALJ erred in failing to address her low Global Assessment Functioning ("GAF") scores.  (*Id.* at 23-24.)

### B.    Defendant's Arguments

In response, Defendant makes six arguments.  First, Defendant argues that the ALJ properly considered all of Plaintiff's mental impairments at step two of the sequential analysis. (Dkt. No. 11 at 6-8 [Def.'s Mem. of Law].)  Second, Defendant argues that the ALJ properly determined that Plaintiff's mental impairment does not meet Listing 12.06.  (*Id.* at 9-12.)  Third, Defendant argues that the ALJ properly evaluated the medical evidence, including the opinion of the treating physicians, and reasonably found that Plaintiff retained the RFC for routine work in a low contact setting.  (*Id.* at 12-18.)  Fourth, Defendant argues that the ALJ properly evaluated Plaintiff's credibility.  (*Id.* at 18-20.)  Fifth, Defendant argues that the ALJ properly found that Plaintiff could do other work.  (*Id.* at 20-22.)  Sixth, and finally, the ALJ argues that remand is not required for the ALJ to consider the additional evidence submitted.  (*Id.* at 22-24.)

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the

correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B.      Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520,

416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.

*See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as

follows:

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity.  If he is not, the [Commissioner]
> next considers whether the claimant has a "severe impairment" which
> significantly limits his physical or mental ability to do basic work
> activities.  If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has an
> impairment which is listed in Appendix 1 of the regulations.  If the
> claimant has such an impairment, the [Commissioner] will consider him
> disabled without considering vocational factors such as age, education,
> and work experience; the [Commissioner] presumes that a claimant who is
> afflicted with a "listed" impairment is unable to perform substantial
> gainful activity.  Assuming the claimant does not have a listed
> impairment, the fourth inquiry is whether, despite the claimant's severe
> impairment, he has the residual functional capacity to perform his past
> work.  Finally, if the claimant is unable to perform his past work, the
> [Commissioner] then determines whether there is other work which the
> claimant could perform.  Under the cases previously discussed, the
> claimant bears the burden of the proof as to the first four steps, while the
> [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV.  ANALYSIS

### A.  Whether New Evidence Submitted to the Commissioner Warrants Reversal, or, in the Alternative, Remand

After carefully considering the matter, the Court answers this question in the negative in

part and the affirmative in part, generally for the reasons stated in Plaintiff's memorandum of

law.  (Dkt. No. 10 at 9-11 [Pl.'s Mem. of Law].)  The Court would only add the following brief

analysis.

Plaintiff argues that the Commissioner erred when the Appeals Council to failed to

consider new evidence she submitted.  To be sure, "new evidence submitted to the Appeals

Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision." *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996). However, "the new evidence submitted to the Appeals Council forms part of the administrative record under review . . . only to the extent that it relates to the time frame encompassed in the ALJ's decision." *Baladi v. Barnhart*, 33 F. App'x 562, 564 (2d Cir. 2002) (citing *Perez*, 77 F.3d at 45). Here, Plaintiff submitted to the Appeals Council treatment records and medical source statements from her treating physician, Dr. Thomas Osborne, M.D., for the period June 2010 through August 2012 and a psychological and intellectual assessment of employability conducted by Mary Ann Moore, Psy. D., for Broome County Department of Social Services in August 2012. (T. 551-628.) All of these records relate to a period relevant to the decision rendered by the ALJ in this case. Accordingly, those records are part of the administrative record under review.

Defendant counters that the Appeals Council did consider the new evidence but found that it did not provide a basis for changing the ALJ's decision. However, "[w]hen[, as here,] the Appeals Council denies review after considering new evidence, [the Court] simply review[s] the entire administrative record, which includes the new evidence, and determine[s], as in every case, whether there is substantial evidence to support the decision of the [Commissioner]." *Perez*, 77 F.3d at 46.

Because, for the following reasons, consideration of the new evidence, among other record evidence, may require a change in the ALJ's decision, remand is appropriate.

**B.** **Whether the ALJ Erred at Step Two of the Sequential Analysis When She Concluded that Plaintiff's Mental Impairments Were Not Present On and After the Amended Onset Date Through the Date Last Insured**

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 10 at 11-14 [Pl.'s

Mem. of Law].)  The Court would only add the following analysis.

According to Social Security Regulations, "[a]n impairment or combination of impairments is not severe if it does not significantly limit a [claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1521(a).  The standard for a finding of severity under the second step of the sequential analysis has been found to be de minimis, and is intended only to screen out the truly weakest of cases.  *Davis v. Colvin*, No. 11-CV-0658, 2013 WL 1183000, at *8 (N.D.N.Y. Feb. 27, 2013) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir.1995).  At step two, the claimant bears the burden to provide medical evidence demonstrating the severity of her condition.  *See* 20 C.F.R. § 404.1512(a); *Bowen*, 482 U.S. at 146.

Here, the ALJ concluded that Plaintiff's panic disorder is a severe impairment.  However, the ALJ noted that "[t]here are no records of treatment for any mental impairment in the record after the amended alleged onset date of disability [February 9, 2009] through the date last insured [December 31, 2009]."  (T. 33.)  The ALJ went on to explain that "[a]ny claim of disability necessarily rests on [Plaintiff's] mental impairments, none of which are shown to have been present on and after the amended alleged onset date of disability and prior to the date last insured.  Mental impairments are shown present as of the date [Plaintiff] filed her application for supplemental security income."  (T. 34.)

Plaintiff argues that the ALJ misunderstands the nature of mental impairments and that there is not necessarily a definitive starting point for such impairments, nor do they just come and go.  Defendant counters that Plaintiff's argument that the ALJ erroneously concluded that her mental impairments were not present after the onset date is not borne out by a review of the ALJ's decision, which reflects that Plaintiff's panic disorder was present after the amended onset

date and constituted a severe impairment.  Defendant further argues that, although the ALJ found that Plaintiff's learning disorder and ADHD were not severe, she provided a reasonable basis for her finding.  Moreover, Defendant argues, Plaintiff's work history as a part-time cashier undermines her contention that her learning disorder is disabling.  In any event, Defendant notes, any error on the part of the ALJ is harmless because she did find that Plaintiff had a severe impairment.

As an initial matter, it is important to clarify what the ALJ said regarding when the presence of a severe impairment existed.  While it is technically correct that, as Defendant contends, the ALJ concluded that Plaintiff's panic disorder was a severe impairment after the alleged onset date, she also specifically stated that none of Plaintiff's mental impairments, including her panic disorder, were present prior to Plaintiff's date last insured.  The ALJ went on to unambiguously state that Plaintiff's mental impairments "are shown present as of the date she filed her application for [SSI]."  (T. 34.)  Accordingly, the ALJ essentially concluded that, there being no disabling impairment present between Plaintiff's onset date and date last insured, Plaintiff was not entitled to disability insurance benefits.  This is because Social Security Disability Insurance requires that a claimant show that she became disabled during a period when she was insured.  *See* 42 U.S.C. § 423(c)(1).  Supplemental Security Income, on the other hand, has no such requirement.  *See* 42 U.S.C. §§ 1381a, 1382(a).  *See also Tavarez v. Astrue*, No. 11-CV-2784, 2012 WL 2860797, at * 2 (E.D.N.Y. July 11, 2012).

Next, the record clearly reflects that Plaintiff had mental impairments as far back as her childhood.  For example, the record is replete with references to a severe assault that Plaintiff suffered at the age of three.  (T. 250.282, 285, 291, 299, 312, 419, 544.)  Moreover, the record reflects that Plaintiff had been classified as a student with a learning disability as far back as

middle school and received special education services as a result. (T. 268.) Although testing revealed that Plaintiff's math skills were at or above grade level, in 2004, when Plaintiff was in the eleventh grade she tested at the fourth grade level for reading and the seventh grade level for written language. (T. 222-223.) In 2001, Plaintiff tested at the fourth grade level for reading and the fifth grade level for written language. (T. 268-269.) That same year, Plaintiff's overall score on the Wechsler Intelligence Scale for Children reflected that she was within the low average to average range of intellectual functioning. (*Id*.) Psychologist, Jerry Duvinsky, Ph.D., reported that between August and November of 2011, he treated Plaintiff for a history of ADHD and a cognitive disorder, in addition to her panic disorder. (T. 417.) In 2012, intelligence testing reflected that Plaintiff's full scale IQ was 74, which indicates she was functioning in the borderline range of intellectual ability. (T. 624.)

Although Defendant argues that the ALJ had a reasonable basis for her finding that Plaintiff's learning disorder and ADHD were not severe, the ALJ's decision merely reflects her conclusory finding that "those impairments do no more than minimally adversely affect Plaintiff's ability to engage in substantial gainful work activity." (T. 33.) Defendant's additional argument, that Plaintiff's prior work as a part-time cashier undermines her contention that her learning disorder is a severe impairment, is unavailing because the ALJ's decision does not reflect that she relied on Plaintiff's work history in support of her finding that Plaintiff's learning disorder was not severe. "Subsequent arguments by the Commissioner detailing the substantial evidence supporting the ALJ's decision are not a proper substitute for the ALJ engaging in the same evaluation." *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 144 (N.D.N.Y. 2012) (citing *Peralta v. Barnhart*, No. 04-CV-4557, 2005 WL 1527669, at *10 (E.D.N.Y. June 22, 2005)).

Also, the ALJ's finding that there is no evidence of the severity of Plaintiff's panic disorder between her alleged onset date and her date last insured due to the lack of treatment records during that time period is problematic. First, there are records of Plaintiff's frequent hospitalizations for anxiety-related issues in 2003 and 2004. (T. 271-324.) Moreover, records submitted to the Appeals Council reflect that Plaintiff's treating physician, Dr. Osborne, reports that Plaintiff was having severe anxiety and panic attacks during the period beginning June 17, 2010 through August 31, 2012. (T. 614-618.)

To be sure, courts are entitled to rely on the absence of medical evidence to find that a claimant's failure to seek medical treatment undermines her claim of total disability. *See Navan v. Astrue*, 303 F. App'x 18, 20 (2d Cir. 2008) (citing *Arnone v. Bowen*, 882 F. 2d 34, 39 (2d Cir. 1989.)). However, where there is evidence of the severity of an impairment during the period shortly after the relevant time period, such evidence strongly supports a conclusion that the very same impairment was disabling during the relevant time period. *See Reyes v. Barnhart*, 226 F. Supp. 2d 523, 530 (S.D.N.Y. 2002). Moreover, the ALJ should consider any explanation for the failure to seek treatment, such as a lack of health insurance, when deciding what, if any, inference to make regarding the lack of treatment. *See Kennerson v. Astrue*, No. 10-CV-6591, 2012 WL 3204055, at *13 (W.D.N.Y. Aug. 3, 2012).

The record does not reflect whether the ALJ sought an explanation for the lack of treatment during the relevant period. Due to evidence of the existence of Plaintiff's anxiety related symptoms in 2004, and again in 2010, as well as evidence of Plaintiff's low intellectual functioning scores in 2004 and 2012, an inference could be made that during the relevant period, Plaintiff's mental impairments significantly limited her ability to do basic work activities. *See* 20 C.F.R. § 404.1521. Therefore, considering the de minimis standard for a finding of severity,

it was error for the ALJ to conclude, solely based on a lack of treatment records, that Plaintiff's mental impairments were not severe during the relevant time period.

Finally, the Defendant's argument that any error is harmless because the ALJ concluded that Plaintiff does have a severe impairment, ignores the issue of prejudice to Plaintiff regarding her ineligibility for Disability Insurance benefits as a result of the ALJ's finding that no severe impairment existed prior to her date last insured. To be sure, where "an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, No. 07–CV–0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb. 18, 2010). *See also* 20 C.F.R. § 404.1523 (ALJ required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity"). Here, the ALJ did not deny SSI benefits based on the lack of a severe impairment, but effectually denied Plaintiff Disability Insurance benefits on that basis. Accordingly, the ALJ's error was not harmless and therefore, remand is warranted so that the ALJ may reevaluate her finding at step two of the sequential analysis, considering all of the record evidence.

### C. Whether the ALJ Erred in Finding that Plaintiff's Anxiety Disorder Does Not Meet or Equal Listing 12.06

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 10 at 5-8 [Pl.'s Mem. of Law].) The Court would only add the following analysis.

A plaintiff will meet or equal Listing 12.06 where the following two prongs are met:

A.  Medically documented findings of at least one of the
following:
1.  Generalized persistent anxiety accompanied by three out of four
of the following signs or symptoms:
a. Motor tension; or
b. Autonomic hyperactivity; or
c. Apprehensive expectation; or
d. Vigilance and scanning;
or
2.  A persistent irrational fear of a specific object, activity, or
situation which results in a compelling desire to avoid the dreaded
object, activity, or situation; or
3.  Recurrent severe panic attacks manifested by a sudden
unpredictable onset of intense apprehension, fear, terror and sense
of impending doom occurring on the average of at least once a
week; or
4.  Recurrent obsessions or compulsions which are a source of
marked distress; or
5.  Recurrent and intrusive recollections of a traumatic experience,
which are a source of marked distress;
AND
B.  Resulting in at least two of the following:
1.  Marked restriction of activities of daily living; or
2.  Marked difficulties in maintaining social functioning; or
3.  Marked difficulties in maintaining concentration, persistence,
or pace; or
4.  Repeated episodes of decompensation, each of extended
duration.
OR
C.  Resulting in complete inability to function independently outside the
area of one's home.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06.

In support of her decision that Plaintiff's impairment does not meet or equal Listing

12.06, the ALJ found that Plaintiff does not meet the requirements of Part B or Part C of that

Listing, relying almost entirely on the opinion of one of the Commissioner's non-examining

medical review psychologists, Thomas Harding.  (T. 34-35.)  Plaintiff argues that the ALJ erred

in failing to find that Plaintiff's impairment met or equaled Listing 12.06 because she relied on

Dr. Harding's assessment, which is not substantiated by the record.  Defendant counters that Dr.

Harding's assessment is supported by Plaintiff's reported activities of daily living as well as the opinions of Dr. Alexander and Dr. Duvinsky.

Here, Dr. Harding ostensibly reviewed the record evidence, and on February 22, 2013 and February 23, 2013, respectively, completed Psychiatric Review Technique forms for the periods identified as "to current" and "to 12/31/09." (T. 437-450, 456-469.) The ALJ noted that Dr. Harding opined that the evidence was insufficient to establish that Plaintiff had a severe impairment prior ro December 31, 2009, (T. 456-469) but that, for the period through February 22, 2013, Plaintiff had an affective disorder and an anxiety-related disorder that did not meet listing-level severity, (T. 437-450). Specifically, Dr. Harding opined that Plaintiff had a mild restriction of activities of daily living and mild difficulties in maintaining social functioning. (T. 447.) Dr. Harding further opined that Plaintiff had moderate difficulties in maintaining concentration, persistence or pace. (*Id*.) Finally, Dr. Harding noted that there was insufficient evidence regarding whether Plaintiff had repeated episodes of deterioration, each of extended duration. (*Id*.) By way of explanation, Dr. Harding noted that Plaintiff had a minimum of three brief hospital stays during one period in 2004, and "[t]herefore[,] extended periods of [de]compensation cannot be showed unless you take 2004 itself as one long one." (T. 449.)

The ALJ found that "Dr. Harding's assessment is unrebutted and given evidentiary weight and adopted." (T. 34.) Relying on Dr. Harding's opinion, the ALJ concluded that Plaintiff has mild limitation in her activities of daily living and in maintaining social functioning and moderate limitation in maintaining concentration, persistence or pace. (T. 34.) The ALJ further found that Plaintiff had no episodes of decompensation, which have been of extended

duration.[1]  (*Id*.)  Further, the ALJ noted that when Plaintiff's attention and concentration was tested, it was intact, citing the evaluation report of consultative examiner, Michael Alexander, Ph.D., and the medical source statement of Plaintiff's treating psychologist, Jerry Duvinsky, Ph.D.  (T. 34, 420, 426.)  While Dr. Duvinsky noted that Plaintiff reported diminished concentration and attention, it was not formally assessed.  (T. 220.)  Dr. Alexander, however, tested Plaintiff's attention and concentration and found it to be intact.  (T. 426.)  Given that both opinions were rendered prior to Dr. Harding's review of the medical records, it stands to reason that Dr. Harding considered those opinions in assessing the severity of Plaintiff's anxiety disorder.

However, a July 24, 2012 report of Plaintiff's treating psychologist, Angela Crawford, Ph.D., was clearly not considered by Dr. Harding, nor was it addressed by the ALJ in determining whether Plaintiff's anxiety disorder met or equaled Listing 12.06.  In that report, which is based on Dr. Crawford's treatment of Plaintiff from May 3, 2012 through July 19, 2012, Dr. Crawford opines that Plaintiff has a marked limitation in maintaining attention and concentration for extended periods and in the ability to complete a normal work day and work week without interruptions from psychological based symptoms and to perform at a consistent

---

[1]    "Extended duration" is defined as "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks."  *Daniel v. Astrue*, No. 10-CV-5397, 2012 WL 3537019, at*6 (E.D.N.Y. Aug. 14, 2012) (quoting 20 C.F.R. § 404, Subpt. P, App. 1 at Sec. 12.06B (1987)).  Here, the record reflects that Plaintiff was an inpatient at various hospitals four times in 2004 due to anxiety-related issues.  While periods of hospitalization are not required for a finding of decompensation, nor must any period of hospitalization last for two weeks or more, *see Duell v. Astrue*, No.08-CV-9, 2010 WL 87298 at *7,  n.9 (N.D.N.Y. Jan.5, 2010), here, Plaintiffs' hospitalizations are outside of the relevant time period, *see Petrie v. Astrue*, 412 F. App'x 401, 408-09 (2d Cir. 2011).  Accordingly, any error by the ALJ in failing to explain her decision that Plaintiff had no episodes of decompensation was harmless.

pace without an unreasonable number and length of rest periods. (T. 547.) In addition, Dr.

Crawford opined that Plaintiff has a medium to marked limitation in her ability to get along with

co-workers or peers without distracting them or exhibiting behavioral extremes and a marked

limitation in her ability to respond appropriately to ordinary stressors in the work setting. (T.

548.)

"Among the ALJ's legal obligations is the duty to adequately explain h[er] reasoning in

making the findings on which h[er] ultimate decision rests, and in doing so must address all

pertinent evidence." *Newsome v. Astrue*, 817 F. Supp. 2d 111, 127 (E.D.N.Y. 2011) (quoting

*Calzada v. Astrue*, 753 F. Supp. 2d 250, 275 (S.D.N.Y. 2010)). Here, the ALJ did not explain

whether she considered Dr. Crawford's opinions in this regard, and if so, why she disregarded

those opinions as it related to the listing-level severity of Plaintiff's anxiety disorder. This

reason alone warrants remand so that the ALJ may adequately explain her decision that

Plaintiff's anxiety disorder does not meet or equal Listing 12.06 based on all of the record

evidence, including the treatment records and medical source statement of Dr. Crawford.

### D.      Whether the ALJ Properly Applied the Treating Physician Rule

After carefully considering the matter, the Court answers this question in the negative, in

part for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 10 at 17-18 [Pl.'s Mem.

of Law].) The Court would only add the following analysis.

Under the "treating physician's rule," controlling weight is given to a plaintiff's treating

physician's opinion when (1) the opinion is well supported by medically acceptable clinical and

laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial

evidence in the record, such as opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2);

*Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir.2004); *Brogan-Dawley v. Astrue*, 484 F. App'x

632, 633-34 (2d Cir. 2012).  When controlling weight is not given, the ALJ should consider the following factors to determine the proper weight assigned to a treating physician's opinion: (1) frequency of the examination and the length, nature and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist.  *See* 20 C.F.R. § 404.1527(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.2000).  Regulations require ALJs to set forth his or her reasons for the weight assigned to a treating physician's opinion.  *See Shaw*, 221 F.3d at 134.

Here, at step three of the sequential analysis, the ALJ discussed the opinions of Drs. Alexander, Harding, Duvinsky and Crawford.  (T. 37-38.)  The ALJ explained that she gave Dr. Alexander's opinion "evidentiary weight" because "his statements are supported by the records submitted and because it is in agreement with those by the previous treating source, Dr. Duvinsky."  (T. 38.)  The ALJ gave Dr. Crawford's opinion "lesser weight" because "even if [her assessed limitations] were accepted, treatment was supposedly sought due to an increase in anxiety in the few months prior to the hearing, so the limits would be recent, not apply earlier, and could not be shown to have existed at that level earlier or permanently."  (*Id*.)  While the ALJ, after explaining the weight given to Dr. Alexander's opinions, stated that "[m]any of the symptoms reported by Dr. Duvinsky were attributed to reactions to abusive treatment by [Plaintiff's] husband and she is not with him anymore[,]" she failed to specifically explain the weight assigned to Dr. Duvinsky's opinions.  (*Id.*)  For purposes of deciding the severity of Plaintiff's impairments, the ALJ explained that "Dr. Harding's assessment is unrebutted and given evidentiary weight and adopted."  (T. 24.)  Although the ALJ acknowledged the distinction  between an assessment of the severity of an impairment and as assessment of RFC, she nonetheless failed to explain the weight assigned to Dr. Harding's mental RFC.

Plaintiff argues that the ALJ and the Commissioner erred in failing to assign controlling weight to the opinions of Plaintiff's treating physician, Dr. Osborne, and her treating psychologists, Dr. Duvinsky and Dr. Crawford. Defendant counters that the ALJ properly credited the opinions of Drs. Alexander and Harding over the opinions of Drs. Duvinsky and Crawford, noting that the latter two opinions were inconsistent with the former two. To be sure, Defendant does not address the Commissioner's failure to consider Dr. Osborne's opinions under the treating physician rule. However, in opposition to Plaintiff's argument that the Commissioner's failure to consider new evidence warrants remand, Defendant argues that Dr. Osborne's medical source statements post date the ALJ's decision, and therefore, need not be considered. Moreover, the Defendant contends, Dr. Osborne's opinions are internally inconsistent and are also at odds with the opinions of Drs. Harding, Alexander, and portions of Dr. Duvinsky's.

First, it was error for the ALJ to give lesser weight to the opinion of Dr. Crawford because it is inconsistent with the opinion of Dr. Hartford. Dr. Hartford is a non-examining psychologist who reviews the record evidence for the Commissioner and forms an opinion on the basis of that evidence. Dr. Hartford completed a mental RFC form on February 22, 2012. Dr. Crawford did not even begin her treatment relationship with Plaintiff until May 3, 2012, and completed her mental assessment form on July 24, 2012. (T. 537-549.) Moreover, where less than controlling weight is assigned to a treating source, such as Dr. Crawford, the ALJ must give consideration to such things as the length and nature of the treating relationship and the evidence in support of the opinion. Here, Dr. Crawford is a specialist in psychology and treated Plaintiff for approximately three months, which included six visits. Dr. Crawford's treatment notes reflect Plaintiff's long history of panic attacks, anxiety and depression as well as Plaintiff's

concern that her previous trauma was continuing to affect her. Accordingly, the ALJ's assignment of lesser weight to Dr. Crawford's opinion because "treatment was supposedly sought due to an increase in anxiety in the *few months prior to the hearing*" is belied by Dr. Crawford's treatment notes. (T. 38 [emphasis added].)

Next, the ALJ again erred in failing to consider the appropriate factors before assigning less than controlling weight to the opinion of Dr. Duvinsky, also a treating source. Like Dr. Crawford, Dr. Duvinsky is a specialist in the area of psychology and treated Plaintiff over a three month period, which included at least five visits. The ALJ's statement that "[m]any of the symptoms reported by Dr. Duvinsky were attributed to reactions to abusive treatment by [Plaintiff's] husband and she is not with him anymore[,]" is troubling. Dr. Duvinsky's treatment notes, although barely legible, include Plaintiff's fear that her husband "would kill her like he promised." (T. 492.) In addition, Dr. Duvinsky's notes reference the severe assault Plaintiff experienced as a small child. (T. 496.)

Regarding the opinions of Plaintiff's treating physician, Dr. Osborne, the Court notes that, although not a specialist in the area of mental heath, he did treat Plaintiff for anxiety. The record before the ALJ included Dr. Osborne's treatment notes from October 11, 2011 through December 29, 2011. (T. 375-416.) For example, Plaintiff presented to Dr. Osborne with complaints of anxiety on October 11, 2011, October 27, 2011 and November 7, 2011. (T. 396, 401, 412.) On October 11, 2011, Dr. Osborne noted that he first treated Plaintiff for "this episode" of anxiety on September 22, 2010. Nonetheless, there is virtually no mention of Dr. Osborne in the ALJ's decision as it relates to Plaintiff's mental impairments.[2]

---

[2]      The sole reference to the exhibit that is Dr. Osborne's treatments notes is in reference to Plaintiff's alleged ankle impairment. (T. 33.)

Plaintiff also supplemented the record with Dr. Osborne's treatment notes from January 20, 2012 through August 2, 2012, which reflect his continued treatment of Plaintiff's anxiety. (T. 551, 557, 560, 572.) In addition, Plaintiff provided the Appeals Council with two separate questionnaires completed by Dr. Osborne on August 30, 2012 regarding the period from December 29, 2011 through August 2, 2012 (T. 607-611) and August 31, 2012 regarding the period from June 17, 2010 through August 31, 2012 (T. 614-618). To the extent Defendant argues that these questionnaires are irrelevant to the ALJ's determination because they are opinions rendered after the ALJ's decision was issued, she is mistaken. The questionnaires reflect Dr. Osborne's opinions regarding Plaintiff's abilities and limitations during time periods that coincide with the relevant period under review. To be sure, the questionnaires are, as Defendant points out, internally inconsistent. For example, for the period beginning December 29, 2011, Dr. Osborne noted that Plaintiff had marked limitations in all four areas of concentration and persistence, but for the period beginning June 17, 2010, Dr. Osborne noted that Plaintiff had extreme limitations in two areas, and marked and more than slight limitations in the remaining two areas. (T. 609, 616.) In addition, for the period beginning December 29, 2011, Dr. Osborne noted that Plaintiff had medium limitations in all three areas of interaction with others, while, for the period beginning June 17, 2010, he noted no or mild limitation in one area, medium limitation in the second area, and extreme limitation in the third area. (T. 610, 617.) Nonetheless, it is clear that Dr. Osborne, a treating medical source, found Plaintiff had marked or extreme limitations in areas of concentration and persistence. Accordingly, it was error for the Appeals Council to decline to remand this case back to the ALJ for further review based on this new evidence.

For all of these reasons, remand is necessary so that the ALJ may sufficiently explain the weight assigned to the opinions of Plaintiff's treating sources.

**E.      Whether the ALJ Properly Calculated Plaintiff's RFC, Including a Proper Consideration of Plaintiff's GAF Scores**

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated in Plaintiff's memorandum of law.  (Dkt. No. 10 at 18-22, 23-24 [Pl.'s Mem. of Law].)  The Court would only add the following analysis.

RFC is defined as

> what an individual can still do despite his or her limitations ... Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis.  A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96-8p, 1996 WL 374184, at *2).

"In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work."  *Domm v. Colvin*, No. 12-CV-6640, 2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 404.1545(a)(3)-(4)).  The ALJ must consider all of the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and the plaintiff's subjective evidence of symptoms.  *See* 20 C.F.R. §§ 404.1545(b)-(e).  The ALJ must consider RFC assessments made by acceptable medical sources and may consider opinions from other non-medical sources to show how a claimant's impairments may affect her ability to work.  *See* 20 C.F.R. § 404.1513(c)(d).

Plaintiff argues that the ALJ's RFC determination was erroneous because (1) she failed to consider the totality of Plaintiff's impairments in combination and their impact on her ability to engage in substantial gainful activity, (2) her conclusion that Plaintiff can frequently

understand, carry out and remember simple instructions is not supported by substantial evidence, and (3) her conclusion that Plaintiff can, on a sustained basis, respond appropriately to supervisors, co-workers and usual work situations and frequently deal with changes in a routine, low contact work setting are not supported by substantial evidence. Defendant counters that the ALJ's RFC determination is supported by the opinions of Drs. Alexander and Harding and in part by the opinion of Dr. Duvinsky.

Plaintiff also argues that the ALJ erred in failing to consider Plaintiff's low GAF scores and explain how they were consistent with a finding of non-disability. Defendant counters that the ALJ's failure to mention every one of Plaintiff's GAF scores in the her decision does not mean she did not consider them.

An ALJ's RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir.1984). Further, when determining the Plaintiff's RFC, the ALJ is required to consider all of Plaintiff's medically determinable impairments including those that are not severe. *See Tudor v. Comm'r of Soc. Sec.*, No. 12-CV-2795, 2013 WL 4500754, at *11 (E.D.N.Y. Aug. 21, 2013) (citing 20 C.F.R. § 404.1545(a)(2)). Here, as indicated in Points IV.B and IV.D. of this Decision and Order, the ALJ failed to appropriately consider all of Plaintiff's mental impairments, failed to properly explain the weight assigned to the opinions of Plaintiff's treating sources, and failed altogether to consider the opinion of Dr. Osborne. Moreover, the Commissioner failed to reconcile Plaintiff's GAF scores with her finding of non-disability. Dr. Harding, the Commissioner's record reviewing psychologist, noted Plaintiff's GAF scores throughout her 2004 hospitalizations, which ranged from 15-30 at admission and 55 upon discharge. (T. 451, 313, 281, 272.) Dr. Duvinsky assigned Plaintiff a GAF of 60 in August

of 2011. (T. 498.) Finally, included in the new evidence submitted to the Appeals Council is Dr. Moore's August 2012 GAF assessment of 52. (T. 625.) "A GAF of 51 to 60 signifies 'moderate symptoms (e.g., flat affect and circumstantial speech occasional panic attacks) or moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers).'" *Snyder v. Astrue*, No. 07-CV-0763, 2009 WL 3381556, at *2 n.2 (N.D.N.Y. Oct. 16, 2009) (quoting Diagnostic and Statistical Manual of Mental Disorders-IV-TR, p. 34)). Thus, Plaintiff's most recent GAF score of 52 would be an important indicator of her mental limitations. "Without addressing this score in reaching [her] decision, 'the Court is left to speculate whether all the circumstances of [Plaintiff's] claim were thoroughly analyzed, or instead were overlooked' by the ALJ." *Stewart v. Astrue*, No. 10-CV-3032, 2012 WL 314867, at *8 (E.D.N.Y. Feb. 1, 2012) (quoting *Armstead v. Chater*, 892 F. Supp. 69, 76 (E.D.N.Y. 1995)). "While the ALJ is not allowed to rely on any test score alone, *see* 20 C.F.R. § 416.926a(e)(4)(i), in accordance with h[er] duty under 20 C.F.R. § 404.1520(3), the ALJ must consider the entire record." *Id.*

Accordingly, remand is necessary so that the ALJ may revisit her RFC determination after a thorough review of the entire record, including the new evidence submitted, and consideration of all of Plaintiff's impairments.

**F.      Whether the ALJ Properly Assessed Plaintiff's Credibility**

After carefully considering the matter, the Court answers this question in the negative, in part for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 10 at 18-22 [Pl.'s Mem. of Law].) The Court would only add the following analysis.

A Plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252,

270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992).

However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at \*17 (S.D.N.Y. Mar. 15, 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271. Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. *Id.*

Here, the ALJ considered Plaintiff's testimony and determined that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms;

however, her statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible because they are unsupported by competent opinion entitled to significant weight and contradicted by other evidence." (T. 36.)

As indicated in Points IV.D. and IV.E. of this Decision and Order, remand is necessary so that the ALJ may revisit her RFC assessment after properly considering all of the evidence and appropriately weighing the opinions of Plaintiff's treating sources. Accordingly, remand is also necessary so that the ALJ may revisit her credibility assessment after properly reassessing all of the record evidence.[3]

### G. Whether the ALJ's Determination at Step Five of the Sequential Analysis is Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the negative, in part for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 10 at 22-23 [Pl.'s Mem. of Law].) The Court would only add the following analysis.

Here, at step five of the sequential analysis, the ALJ did not obtain the opinion of a vocational expert in determining whether there are jobs in the national economy that Plaintiff can perform. Instead, the ALJ decided that there are jobs in the national economy that Plaintiff can perform, relying solely on the Medical-Vocational guidelines.

At step five of the sequential analysis, the Commissioner can usually meet her burden to

---

[3] In opposing Plaintiff's arguments that the ALJ erred in assessing her credibility and in finding that Plaintiff's panic disorder did not meet or equal Listing 12.06, Defendant references Plaintiff's reported activities of daily living. (*See* Dkt. No. 11, at 11, 19 [Def.'s Mem. of Law] [citing T. 180, 182].) While Plaintiff reported that she "sometimes" cooked, (T. 180) that she does not cook often because her boyfriend "does most[,] if not all[,] of the cooking, (T. 181), and that she is able to do "some cleaning, sometimes laundry, [and] washing dishes" but that she needs help with the laundry because it is too heavy for her to carry and she needs help folding the clothes, (T. 182.), Defendant broadly contends that Plaintiff reported that she cooked, cleaned, washed dishes and did laundry. Such exaggerations of the evidence undermine the Court's ability to review the parties' motions and should be avoided in the future.

establish that there is work existing in significant numbers in the national economy which the plaintiff could perform, by reliance on the Medical-Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grids." *See Baldwin v. Astrue*, No. 07-CV-6958, 2009 WL 4931363, at *20 (S.D.N.Y. Dec. 21, 2009). However, when a plaintiff suffers from significant non-exertional limitations that significantly limit her employment opportunities, exclusive reliance on the Grids is inappropriate. *See Baldwin*, 2009 WL 4931363, at *27 (citing *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir.1986)). "A plaintiff's range of potential employment is significantly limited when he suffers from the 'additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a [plaintiff's] possible range of work as to deprive him of a meaningful employment opportunity.'" *Id.* (quoting *Bapp*, 802 F.2d at 606). However, "the mere existence of a non-exertional impairment does not automatically preclude reliance on the guidelines." *Zabala v. Astrue*, 595 F.3d 402, 410–411 (2d Cir.2010) (citing *Bapp*, 802 F.2d at 603).

Because remand in necessary so that the ALJ may, among other things, revisit the weight assigned to the opinions of Plaintiff's treating sources, remand is also necessary so that the ALJ may revisit her decision at step five of the sequential analysis after having reevaluated her RFC analysis in accordance with this Decision and Order. Should the ALJ determine that Plaintiff has "significant non-exertional limitations that significantly limit her employment opportunities," consultation with a vocational expert may be appropriate. *See Baldwin*, 2009 WL 4931363, at *27.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is

**DENIED**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. §

405(g), for further proceedings consistent with this Decision and Order.

Dated: March 25, 2014
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge